JUDGE RAKOFF

**13 CIV 1080**

SANJAY WADHWA
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
Room 400
New York, New York 10281
(212) 336-0181

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

-against-

              13 Civ.  (  )

              **COMPLAINT**

              **ECF CASE**

CERTAIN UNKNOWN TRADERS IN THE
SECURITIES OF H.J. HEINZ COMPANY

      Defendants.
-------------------------------------------------------------------x

[RECEIVED FEB 15 2013 U.S.D.C. S.D.N.Y. CASHIERS stamp]

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Certain Unknown Traders in the Securities of H.J. Heinz Company ("Defendants"), alleges as follows:

## SUMMARY

1. This is an insider trading case involving highly suspicious trading in call option contracts ("calls") of H.J. Heinz Company ("Heinz") by the Defendants just prior to the February 14, 2013 announcement that Heinz had entered into an agreement to be acquired for $72.50 per share by an investment consortium comprised of Berkshire Hathaway and 3G Capital Partners,

Ltd. (the "Announcement"). The $72.50 per share price represented nearly a 20% premium to Heinz's closing share price on February 13, 2013. As a result of the Announcement, which caused a 1,700% increase in Heinz's trading volume, Heinz's stock price rose nearly 20%, from a close of $60.48 on February 13 to a close of $72.50 on February 14, placing the Defendants in a position to reap substantial profits.

2. The Defendants in this action are either foreign traders or traders trading through foreign accounts whose timely purchases of Heinz calls generated unrealized profits of over $1.7 million. On information and belief, the Defendants are either located or trading through accounts located in Zurich, Switzerland.

3. On information and belief, the Defendants purchased Heinz calls while in the possession of material, nonpublic information concerning the proposed acquisition of Heinz. The Defendants' trading in Heinz calls is highly suspicious. Specifically, on February 13, the day prior to the Announcement, Defendants purchased 2,533 out-of-the money June $65 calls for a total of nearly $90,000. Between September 1, 2012 and February 13, 2013, the account through which the Defendants traded had no prior history of trading in Heinz. The February 13 trading represented a drastic increase in the volume of June $65 calls traded. For example, on February 12, only 14 June $65 calls were purchased while on February 11 no one purchased any June $65 calls. The Announcement caused the price of the June $65 calls to surge over 1,700%, making the Defendants' initial investment of nearly $90,000 worth over $1.8 million.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks permanent injunctions against Defendants, enjoining them from engaging

in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78aa].

6. Venue lies in this Court pursuant to Section 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York and elsewhere, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. During the time of the conduct at issue, shares of Heinz stock were traded on the New York Stock Exchange ("NYSE") and 3G Capital's main office was located in New York, New York.

## DEFENDANTS

7. As set forth in this Complaint, **certain unknown traders** engaged in highly suspicious and highly profitable trading in Heinz calls through an omnibus account located in Zurich, Switzerland in the name of GS Bank IC Buy Open List Options GS & Co c/o Zurich Office (the "GS Account").

3

## RELEVANT ENTITIES

8. **Heinz** manufactures and markets food products such as ketchup and baked beans, and is based in Pittsburgh, Pennsylvania. Heinz's common stock trades on the NYSE under the ticker symbol HNZ and options on its stock trade on various stock options markets.

9. **Berkshire Hathaway** and its subsidiaries engage in various businesses including property and casualty insurance, utilities, freight rail transportation, finance, manufacturing, retailing, and services. Its common stock is listed on the NYSE.

10. **3G Capital** is a private equity firm with its main office in New York, New York.

## FACTS

**Agreement to Acquire Heinz**

11. On February 14, 2013, Heinz announced that it had entered into a merger agreement to be acquired by an investment consortium comprised of Berkshire Hathaway and 3G Capital. The deal price of $72.50 per share represented nearly a 20% premium to Heinz's closing price of $60.48 on February 13.

12. In reaction to the Announcement, on February 14, Heinz's stock closed at $72.50 – an increase of $12.05 per share, or approximately 20%, over the previous trading day's closing price of $60.48. The trading volume in Heinz also skyrocketed on February 14, reaching over 64 million shares, an increase of over 1,700%. Prior to the Announcement, Heinz's stock had consistently traded at just around or below $60 per share since November 2012.

**Suspicious and Profitable Trading by Unknown Traders of Heinz Securities**

13. On February 13, the last trading day before the Announcement, one or more unknown traders, using the GS Account, purchased 2,533 out-of-the-money June $65 calls. This was effectively a wager that Heinz's stock, which had consistently traded around $60 per share

4

for the last four months, would increase in value by approximately $5, or nearly 7.5%, over the next four months.

14. Equity call options, like the ones traded by Defendants, give the buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike price") for a certain period of time (through "expiration"). In general, one buys a call option, or call, when the stock price is expected to rise, or sells a call when the stock price is expected to fall. For example, one "June 2013 $65" call on Heinz stock would give the purchaser the right to buy 100 shares of that stock for $65 per share before the call expired on the Saturday following the third Friday of the referenced month, or, in this case, June 22, 2013. If at the time of purchase the call strike price is above the price at which the stock is then trading, the call is "out-of-the-money" because it would be unprofitable to exercise the call and pay more for the stock than if it were purchased on a stock market.

15. The purchase of 2,533 Heinz calls with a strike price of $65 on February 13 was unusual given the historical options data for those calls. For example, on February 12 only 14 June $65 calls were purchased and on February 11 no June $65 calls were purchased. In fact, since November 14, 2012, not more than 61 of these contracts had been purchased on any other single day.

16. As a result of the Announcement, the price of June $65 calls shot up from a close of $0.40 on February 13 to a close of $7.33 on February 14, an increase of over 1,700%.

17. Between September 1, 2012 and February 13, 2013, the GS Account had no prior trading history in Heinz.

18. The timing, size and profitability of the Defendants' trades, as well as the lack of prior history of significant trading in Heinz in the GS Account, make these trades highly

suspicious. In particular, after not trading Heinz securities in the GS Account for at least six months, Defendants invested nearly $90,000 in risky option positions the day prior to the Announcement. As a result of this well-timed trade, the Defendants' Heinz position increased from approximately $90,000 to over $1.8 million, an increase of nearly 2,000% in just one day.

19. On information and belief, the unknown traders of Heinz securities were in possession of material, nonpublic information about the proposed acquisition of Heinz at the time they made the purchases alleged in this Complaint.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Against All Defendants)

20. The Commission realleges and incorporates by reference paragraphs 1 through 19, as though fully set forth herein.

21. Upon information and belief, at the time the Defendants purchased Heinz calls, as alleged above, they were in possession of material, nonpublic information about the contemplated acquisition of Heinz. The Defendants: (a) knew, recklessly disregarded, or should have known that their trading was in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, owed to the shareholders of Heinz, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the contemplated acquisition that had been conveyed to them was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

22. Upon information and belief, any and all material, nonpublic information that the Defendants received concerning the contemplated acquisition of Heinz, as set forth above, was

disclosed to them by a person or persons who tipped such information with the expectation of receiving a benefit.

23. By virtue of the foregoing, the Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

24. By virtue of the foregoing, the Defendants, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering the Defendants to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint.

## III.

Ordering the Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u-1].

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 15, 2013

*Sanjay Wadhwa*

Sanjay Wadhwa
Senior Associate Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281
(212) 336-0181
Wadhwas@sec.gov

Of Counsel:

Daniel M. Hawke (Hawked@sec.gov)*
Megan M. Bergstrom (Bergstromm@sec.gov)*
David S. Brown (Browndavi@sec.gov)*
Charles D. Riely (Rielyc@sec.gov)

* not admitted in the S.D.N.Y.