SANJAY WADHWA
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281
(212) 336-0181

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :
                                        :
                        Plaintiff,      :
                                        :
        -against-                       :
                                        :      13 Civ. 1080 (JSR)
MICHEL TERPINS                          :
  and                                   :      ECF CASE
RODRIGO TERPINS,                        :
                                        :      AMENDED
                        Defendants,     :      COMPLAINT
                                        :
        -and-                           :
                                        :
ALPINE SWIFT LTD.                       :
                        Relief Defendant. :
-----------------------------------------------------------------------x

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Michel Terpins and Rodrigo Terpins (collectively, the "Defendants") and relief

defendant Alpine Swift Ltd. ("Alpine Swift") alleges as follows:

## SUMMARY

1.      This is an insider trading case involving highly suspicious trading in call option

contracts ("calls") of H.J. Heinz Company ("Heinz") the day prior to the February 14, 2013

announcement that Heinz had entered into an agreement to be acquired for $72.50 per share by

an investment consortium comprised of Berkshire Hathaway and 3G Capital (the

"Announcement"). The $72.50 per share price represented a 20% premium to Heinz's closing

share price on February 13, 2013.  As a result of the Announcement, Heinz's stock price

increased from a close of $60.48 on February 13 to a close of $72.50 on February 14, an increase

of nearly 20%.

2.      The Defendants arranged for the purchase of the Heinz calls in advance of the

Announcement using a Swiss account held by Alpine Swift, a corporate entity formed to hold

assets for which a close relative of the Defendants was the ultimate beneficial owner.

Specifically, on February 13, the day prior to the Announcement, the Defendants used Alpine

Swift's account to purchase 2,533 out-of-the money June $65 calls for a total of nearly $90,000.

The Announcement caused the price of the June $65 calls to surge over 1,700%, making Alpine

Swift's initial investment of nearly $90,000 worth over $1.8 million.

3.      This timely and profitable trading in Heinz calls is highly suspicious.  The trading

in Heinz call options conducted by Defendants was unusual for the Alpine Swift account.  Prior

to February 13, the Alpine Swift account had not previously made any transactions in Heinz

securities or made any purchase of call options.  The purchase of these 2,533 Heinz calls was

also unusual in light of the historical market for the calls.  The February 13 trading, in fact,

represented a drastic increase in the volume of June $65 calls traded.  For example, on February

12, only 14 June $65 calls were purchased while on February 11 no one purchased any June $65

calls.

4.      The Defendants purchased Heinz calls while in the possession of material,

nonpublic information concerning the proposed acquisition of Heinz.  Specifically, they learned

in advance of the Announcement that 3G Capital was in the process of negotiating a major

acquisition and that the subject of the impeding acquisition was Heinz.

5.     On information and belief, the material, nonpublic information that the

Defendants obtained in advance of the Announcement originated with a source who had access

to the material nonpublic information and was under an obligation to not disclose the information

(the "Information Source").

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6.     The Commission brings this action pursuant to the authority conferred upon it by

Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)].

The Commission seeks permanent injunctions against the Defendants, enjoining them from

engaging in the transactions, acts, practices, and courses of business alleged in this Complaint,

disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this

Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the

Exchange Act [15 U.S.C. § 78u-1]. The Commission further seeks a final judgment ordering the

relief defendant to disgorge its ill-gotten gains. The Commission seeks any other relief the Court

may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and

27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78aa].

8.     Venue lies in this Court pursuant to Section 21(d), 21A, and 27 of the Exchange

Act [15 U.S.C. § 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and

courses of business alleged in this Complaint occurred within the Southern District of New York

and elsewhere, and were effected, directly or indirectly, by making use of means or

instrumentalities of transportation or communication in interstate commerce, or the mails, or the

facilities of a national securities exchange. During the time of the conduct at issue, shares of

Heinz stock were traded on the New York Stock Exchange ("NYSE") and 3G Capital's main office was located in New York, New York.  Proceeds from Defendants' unlawful trading of Heinz call options are currently held by Goldman, Sachs & Co. ("Goldman") in New York, New York.

## DEFENDANTS

9.    **Michel Terpins**, age 36, is a citizen and resident of Brazil.  He is a close relative of the beneficial owner of the assets held by Alpine Swift (the "Beneficial Owner") and is the brother of Rodrigo Terpins.  Michel Terpins travels to the U.S. from time-to-time, most recently in February 2013.

10.    **Rodrigo Terpins**, age 40, is a citizen and resident of Brazil.  He is a close relative of the Beneficial Owner and is the brother of Michel Terpins.  Rodrigo Terpins travels to the U.S. from time-to-time, most recently in February 2013.

## RELIEF DEFENDANT

11.    **Alpine Swift** is a Cayman Island limited liability company that holds assets indirectly owned by the Beneficial Owner.  The Beneficial Owner's interest in Alpine Swift involves several layers of corporate entities.  First, Alpine Swift is wholly owned by the Troika Trust, a trust formed under the laws of the Cayman Islands.  Second, the Troika Trust is wholly owned by several Cayman Island companies.  Third, these Cayman Island companies are wholly owned by the Beneficial Owner.  Alpine Swift has delegated the power to make investment decisions to a British Virgin Islands company (the "Investment Adviser Entity").  The trustee of the Troika Trust and the Director of Alpine Swift are not empowered to make investment decisions on behalf of Alpine Swift.

### RELEVANT PEOPLE AND ENTITIES

12.     **Heinz** manufactures and markets food products such as ketchup for consumers

and is based in Pittsburgh, Pennsylvania.  Heinz's common stock trades on the NYSE under the

ticker symbol HNZ and options on its stock trade on various stock options markets.

13.     **Berkshire Hathaway** and its subsidiaries engage in various businesses including

property and casualty insurance, utilities, freight rail transportation, finance, manufacturing,

retailing, and services.  Its common stock is listed on the NYSE.

14.     **3G Capital** is a private equity firm with its main office in New York, New York.

15.     The **Beneficial Owner** is a citizen and resident of Brazil and is a close relative of

Michel Terpins and Rodrigo Terpins.  The Beneficial Owner is the beneficial owner of the

Troika Trust and the assets held by Alpine Swift.

16.     The **Investment Adviser Entity**, is a British Virgin Islands company whose sole

director is a citizen and resident of Brazil (the "Investment Adviser").  The Investment Adviser

Entity serves as the investment adviser for the Troika Trust.  Under the terms of the trust, the

Investment Adviser Entity has sole responsibility for making investment decisions on behalf of

Alpine Swift and the Investment Adviser has power of attorney to make trading decisions in the

Alpine Swift account through which the Heinz trade occurred.

### CALL OPTIONS

17.     Equity call options, like the ones traded in the Alpine Swift account by the

Defendants, give the buyer the right, but not the obligation, to purchase a company's stock at a

set price (the "strike price") for a certain period of time (through "expiration").  In general, one

buys a call option, or call, when the stock price is expected to rise, or sells a call when the stock

price is expected to fall.  For example, one "June 2013 $65" call on Heinz stock would give the

purchaser the right to buy 100 shares of that stock for $65 per share before the call expired on
June 22, 2013. If at the time of purchase the call strike price is above the price at which the
stock is then trading, the call is "out-of-the-money" because it would be unprofitable to exercise
the call and pay more for the stock than if it were purchased on a stock market.

**FACTS**

**Agreement to Acquire Heinz**

18.     On February 14, 2013, Heinz announced that it entered into a merger agreement
to be acquired by an investment consortium comprised of Berkshire Hathaway and 3G Capital.
The deal price of $72.50 per share represented a 20% premium to Heinz's closing price of
$60.48 on February 13.

19.     In reaction to the Announcement, on February 14, Heinz's stock closed at $72.50
– an increase of $12.02 per share, or approximately 20%, over the previous trading day's closing
price of $60.48. The trading volume in Heinz also skyrocketed on February 14, reaching over 64
million shares, an increase of over 1,700%.

20.     The Announcement was the culmination of weeks of nonpublic discussions
between Heinz, 3G Capital and Berkshire Hathaway. The investment consortium comprised of
Berkshire Hathaway and 3G Capital made a nonpublic written offer to buy Heinz's outstanding
shares for $70 per share on January 14, 2013. Between that date and February 14, 2013,
representatives of Heinz, 3G Capital and Berkshire Hathaway along with their advisors
conducted nonpublic negotiations and due diligence. During these nonpublic discussions,
Heinz's stock consistently traded at just around or below $60 per share since November 2012.
A person who possessed information about these nonpublic negotiations could unlawfully profit
by acquiring Heinz securities prior to the Announcement.

**The Alpine Swift Account**

21.     Alpine Swift holds the assets of the Beneficial Owner, some of which are invested through brokerage accounts at Goldman Sachs Bank AG ("GSAG") in Switzerland.  Alpine Swift has a history of trading in U.S. securities through its brokerage accounts at GSAG.  Alpine Swift's representatives have signed account opening documents for Alpine Swift's GSAG accounts, which provide that information about it may be transmitted to, processed and maintained by affiliates of GSAG, including Goldman in New York.  Alpine Swift's representatives also executed other account opening documents, which provide that GSAG may disclose information about Alpine Swift to United States government entities and regulatory bodies in the United States.

22.     The GSAG broker associated with the Alpine Swift account had a history of meeting with the Investment Adviser and members of the Beneficial Owner's family, including Rodrigo Terpins, to discuss the performance of Alpine Swift's assets.  For example, approximately two weeks prior to the Heinz call options purchases, on January 30, 2013, the GSAG broker met with Rodrigo Terpins and the Investment Adviser to discuss the Alpine Swift account.

**Suspicious and Profitable Trading by Rodrigo Terpins of Heinz Securities in the Alpine Swift Account**

23.     Michel Terpins learned prior to February 13 that an investment consortium including 3G Capital was about to announce a major acquisition and further learned that the deal would involve Heinz as the acquisition target.  Michel Terpins then provided this information to Rodrigo Terpins.

24.     After receiving the information concerning the impending acquisition of Heinz, on February 13, the last trading day before the Announcement, Rodrigo Terpins used Alpine

Swift's brokerage account to purchase 2,533 out-of-the-money June $65 calls. This was effectively a wager that Heinz's stock would increase in value by approximately $5 per share.

25.     Rodrigo Terpins placed the trades the day prior to the Announcement while on vacation at Walt Disney World in Orlando by communicating with a GSAG broker using a United States cell phone number. The GSAG broker cautioned Rodrigo Terpins that Goldman currently rated Heinz a "sell." Rodrigo Terpins nevertheless instructed the GSAG broker to still place the trade.

26.     Rodrigo Terpins opted to make the trades in the Alpine Swift account rather than an account in his own name or in Michel Terpins's name. Rodrigo Terpins made this trade in the Alpine Swift account even though he did not have explicit authority to make trades in the Alpine Swift account. The trade was then executed anonymously through an omnibus account named GS Bank IC Buy Open List Options GS & Co C/o Zurich Office. An omnibus account represents the aggregate positions and transactions of a firm and its underlying customers without disclosing the identities of the beneficial owners or customers.

27.     The Alpine Swift account had not purchased any call options between January 1, 2012 and the time of the Heinz trade on February 13, 2013.

28.     The timing, size and profitability of the Defendants' trades, as well as the lack of prior history of trading in Heinz or call options in the Alpine Swift account, make these trades highly suspicious. In particular, after not previously trading any Heinz securities in the Alpine Swift account, the Defendants invested nearly $90,000 in risky option positions the day prior to the Announcement. As a result of this well-timed trade, Alpine Swift's Heinz position increased from approximately $90,000 to over $1.8 million.

29.     The purchase of 2,533 Heinz calls with a strike price of $65 on February 13 was also unusual given the historical trading of those call options.  For example, on February 12 only 14 June $65 calls were purchased and on February 11 no contracts were purchased.  In fact, since November 14, 2012, not more than 61 of these contracts had been purchased on any other single day.

30.     As a result of the Announcement, the price of June $65 calls shot up from a close of $0.40 on February 13 to a close of $7.33 on February 14, an increase of over 1,700%.  In a matter of one day, the Announcement caused Alpine Swift's position in June $65 Heinz calls to appreciate in value nearly 2,000%.

31.     As referenced above, Defendants were in possession of material, nonpublic information about the proposed acquisition of Heinz at the time they made the purchases alleged in this Complaint.  On information and belief, the deal information the Defendants obtained in advance of the Announcement was obtained from an Information Source who disclosed the information in breach of a duty.

## CLAIMS FOR RELIEF

### CLAIM I
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Against Defendants)

32.     The Commission realleges and incorporates by reference paragraphs 1 through 31, as though fully set forth herein.

33.     At the time Defendants purchased Heinz calls, as alleged above, they were in possession of material, nonpublic information about the contemplated acquisition of Heinz.

34.     On information and belief, Defendants: (a) knew, recklessly disregarded, or should have known that their trading with information provided by the Information Source was

in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, owed to the shareholders of Heinz, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the contemplated acquisition that had been conveyed to them by the Information Source was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

35.     Upon information and belief, any and all material, nonpublic information that the Defendants received concerning the contemplated acquisition of Heinz, as set forth above, was disclosed to them by the Information Source or others who tipped such information with the expectation of receiving a benefit.

36.     By virtue of the foregoing, Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

37.     By virtue of the foregoing, Defendants, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**CLAIM II**
**Unjust Enrichment**
**(Against Relief Defendant Alpine Swift)**

38.     The Commission realleges and incorporates by reference paragraphs 1 through 37, as though fully set forth herein.

39.     Alpine Swift's brokerage account was used to place the trades discussed above and received the profits achieved as a result of Defendants' trades.

40.     Alpine Swift obtained the funds described above as a result of the securities law violations alleged above, and under circumstances in which it is not just, equitable or conscionable for Alpine Swift to retain the funds.  As a result of the foregoing, relief defendant Alpine Swift was unjustly enriched.

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Defendants to disgorge all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint;

## III.

Ordering Defendants to pay civil monetary penalties pursuant to Section 21A of the

Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u-1];

## IV.

Ordering Alpine Swift to disgorge all illicit trading profits on a joint and several basis with

Defendants; and

## V.

Granting such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       October 10, 2013


                                        Sanjay Wadhwa
                                        _____
                                        Sanjay Wadhwa
                                        Senior Associate Director
                                        Attorney for Plaintiff
                                        SECURITIES AND EXCHANGE
                                        COMMISSION
                                        New York Regional Office
                                        3 World Financial Center, Suite 400
                                        New York, New York 10281
                                        (212) 336-0181
                                        Wadhwas@sec.gov


Of Counsel:

Daniel M. Hawke (Hawked@sec.gov)*
Megan M. Bergstrom (Bergstromm@sec.gov)
David S. Brown (Browndavi@sec.gov)
Charles D. Riely (Rielyc@sec.gov)


* not admitted in the S.D.N.Y.